# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-16-237-D |
| JOHN ARNOLD SHELLEY, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the United States' Motion to Quash Defendant's Rule 17(c) Subpoenas [Doc. No. 32] and Defendant's Motion to Compel Brady/Giglio Materials [Doc. No. 41]. The parties have filed their respective responses and replies in opposition to, and in support of, the aforementioned motions [Doc. Nos. 39, 44, 48, 49]. The matter is fully briefed and at issue.

## BACKGROUND[1]

Defendant was charged with several counts of, *inter alia*, bank fraud, conspiracy to commit bank fraud, and money laundering. A dispute arose between the parties regarding whether certain sub-agencies of the Federal Deposit Insurance Corporation ("FDIC") could be considered part of the government's "prosecution

---

[1] The facts of this case are well documented and will not be fully restated in this Order except where necessary to address the issues raised by the parties' respective motions.

team" for purposes of determining the extent of its obligation to identify and produce exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, at issue was whether the FDIC's Division of Risk Management ("FDIC-RMS"), the Office of Inspector General - Office of Investigations ("FDIC-OIG"), and the FDIC in its capacity as receiver ("FDIC-R") could be considered part of the prosecution for their actions taken in response to the collapse of the Bank of Union, where Defendant was President and Chairman of the Board. *See* Order, July 26, 2017 at 3-5 [Doc. No. 51] ("Order"). After review of the parties' submissions and hearing oral argument, the Court concluded that, with the exception of the FDIC-OIG, the FDIC was not otherwise part of the "prosecution team" for *Brady/Giglio* purposes. *See* Order at 14.

Additional discovery issues have arisen from the parties' "prosecution team" dispute. First, the government has moved to quash two subpoenas Defendant has served on the FDIC-R and FDIC-RMS on the grounds that Defendant has failed to make the requisite showing under Rule 17(c), Federal Rules of Criminal Procedure [Doc. No. 32]. In addition, Defendant has filed a Motion to Compel [Doc. No. 41], which asks the Court to compel the government "to identify and produce any and all documents subject to disclosure pursuant to *Brady/Giglio* or that are otherwise exculpatory." Mot. to Compel at 1. The Court addresses Defendant's Motion first.

## DISCUSSION

I.  **Defendant's Motion to Compel**

The Court has held the FDIC-RMS and FDIC-R are not part of the "prosecution team" for *Brady/Giglio* disclosure purposes. Accordingly, to the extent Defendant asks the Court to compel the government to identify and produce any potential *Brady/Giglio* material within these agencies' possession,[2] the Motion is denied. To the extent Defendant seeks a more general order compelling the government to identify and produce "any and all documents subject to disclosure pursuant to *Brady/Giglio*," Mot. at 1, that request is also denied. "The *Brady* rule is not a rule of pretrial discovery[.]" *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011); *United States v. Weld*, No. CR-08-83 PJH, 2009 WL 901871, at *2 (N.D. Cal. Apr. 1, 2009) ("[D]efendants cannot use *Brady* simply to search for *Brady* materials. *Brady* is not a pretrial discovery tool.") (citations omitted).

As previously noted by the Court, this is a complex, document-intensive case with document production expected to number in the millions of pages. To that end, *Brady* does not require the government to review all documents that have been

---

[2] Indeed, Defendant's Motion appears to be based on his theory that those agencies constitute part of the prosecution team for *Brady/Giglio* purposes. *See* Mot. to Compel at 5-7.

3

produced to Defendant for purposes of locating and identifying *Brady/Giglio* material:

> To charge prosecutors with knowledge of exculpatory evidence buried in the computer databases of institutions that collect and store vast amounts of digitized data would be an unreasonable extension of the *Brady* rule. The courts, rightly in our view, have refused to make it. The government is not "obliged to sift fastidiously" through millions of pages (whether paper or electronic). It is "under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence."

*Gray*, 648 F.3d at 567 (citing *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, ___ U.S. ___, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *United States v. Joseph*, 996 F.2d 36, 37, 39-41 (3d Cir. 1993) (paraphrasing in original)). Of course, the government does have a duty to identify and disclose exculpatory evidence of which it becomes aware during its review of such documents.[3] Accordingly, the Court finds Defendant's Motion to Compel should be denied.

---

[3] "The court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1256 (D.N.M. 2008) (citation omitted). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution, and the Court should rely on the government's representations of its compliance with *Brady* unless Defendant shows cause to question them and the materiality of the evidence sought. *Id*. If there is any doubt as to whether *Brady* applies to specific evidence, the government should disclose the evidence to Defendant or submit it to the Court for an *in camera* inspection. *Id*.

## II. The Government's Motion to Quash

In the course of discovery, Defendant issued subpoenas to the FDIC-RMS and FDIC-R [Doc. Nos. 32-3, 32-4]. The subpoenas seek documents relating to, among other things, the investigations of Defendant, the Bank of Union's failure, and other defendants to this action. The government moves to quash or modify these subpoenas on the grounds they (1) significantly overlap with joint trial subpoenas agreed to by the parties or (2) exceed the bounds of Rule 17(c), Federal Rules of Criminal Procedure. Mot. to Quash at 4. Alternatively, the government argues that if the subpoenas are allowed to proceed in their current form, any responsive documents should be produced to the Court. *Id.*[4]

A defendant seeking to enforce a subpoena duces tecum pursuant to Rule 17(c) must show that (1) the requested documents are evidentiary and relevant; (2) the defendant cannot, even with due diligence, procure them; (3) the defendant cannot adequately prepare for trial without obtaining their production in advance; and (4) the request was made in good faith and is not a fishing expedition. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). In order to meet this burden, the defendant must make a preliminary showing that the information sought is relevant, admissible, and

---

[4] Irrespective of whether the government has standing to object to the subpoenas, the Court has an independent duty to review their propriety. *United States v. Wittig*, 250 F.R.D. 548, 551 (D. Kan. 2008).

specific. *Nixon*, 418 U.S. at 700; *Morris*, 287 F.3d at 991. Courts in this circuit have applied this standard[5] to subpoenas directed to third parties. *See, e.g., United States v. Wittig*, 250 F.R.D. 548, 551-52 (D. Kan. 2008) ("The Court agrees with the reasoning of other courts that have applied *Nixon* to assess the validity of Rule 17(c) subpoenas issued to third parties, and finds no compelling reason to employ a lesser standard in this case."); *United States v. Leavitt*, No. 2:11-cr-501, 2016 WL 503060, at *2 (D. Utah Feb. 8, 2016) (holding *Nixon* standard applied to subpoena duces tecum issued to third party "[b]ecause a lesser standard has not been adopted by the Supreme Court or the Tenth Circuit[.]"); *United States v. Neal*, No. 11-cr-163, 2011 WL 4829664, at *2 (D. Colo. Oct. 12, 2011) (adopting *Nixon* standard, "[b]ecause it is the more widely-accepted approach[.]").

---

[5] One sister court has previously stated that "[a] real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet [the *Nixon*] standard." *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000). Instead, that court held the relevant test should be whether the subpoena is (1) reasonable, construed using the general discovery notion of material to the defense, and (2) not unduly oppressive for the producing party to respond. *Id*. at 563. However, the District of New Mexico noted such application "has very limited support and is in a distinct minority view." *United States v. Nelson*, No. 15-2023, 2015 WL 9943540, at *3 n. 1 (D.N.M. Dec. 4, 2015). Rather, "cases from the overwhelming majority of courts" have applied the *Nixon* test. *Id*. As neither the Supreme Court nor Tenth Circuit has adopted a lesser standard, and, as noted above, courts in this circuit have rejected applying one, "[t]he Court finds no reason to eschew 'the great weight of authority' and apply any standard other than that set forth by the Supreme Court in *Nixon*." *Id*.

In analyzing a subpoena duces tecum, "[t]he Court must ensure that Rule 17(c) does not become a means of conducting general discovery, which is not permitted in criminal cases." *Wittig*, 250 F.R.D. at 551 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)); *United States v. Hart*, 826 F.Supp. 380, 382 (D. Colo. 1993) ("The courts … have uniformly held that [R]ule 17(c) subpoenas may not be used as a discovery device.") (quoting *Bowman Dairy*, 341 U.S. at 219); *see also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (noting that Rule 17(c) is not to be used to obtain "unknown evidence"). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought … this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F.Supp. 1480, 1493 (S.D. Fla. 1991).

### A.   FDIC-RMS

With respect to Defendant's subpoena to the FDIC-RMS, the Court finds each request contained therein is overly broad and fails to satisfy *Nixon's* specificity requirement. The subpoena broadly requests the FDIC-RMS to produce "any and all documents," "all documents," "all reports," "every document," and "all suspicious activity reports" regarding its investigation over either a significant period of time or with no time restriction. *See* Doc. No. 32-3 at 1-2.[6] These requests do not clear

---

[6] The Court is aware that the joint subpoenas contain similar language; however, those subpoenas were issued without objection and the Court was not called upon to address their propriety.

the specificity hurdle in that they are not adequately focused on documents that will be relevant to the defense, and they amount to a general discovery request. *See Morris*, 928 F.3d at 991 (holding defendant's Rule 17(c) subpoena seeking "all records, documents, reports, telephone logs, etc.," surrounding FBI's investigation "did not overcome the hurdle of specificity as required by *Nixon*."); *United States v. Louis*, No. 04-CR-203(LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (rejecting as too broad a Rule 17(c) subpoena requesting "any and all" documents relating to several categories of subject matter); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (finding Rule 17(c) subpoena that requested "all documents relating or referring to" was "overbroad," "too generalized," and "fail[ed] to adequately specify the information sought"); *see also United States v. Wai Lun Ng*, No. 5:07CR24-V, 2007 WL 3046215 at *3 (W.D.N.C. Oct. 16, 2007) (quashing Rule 17(c) subpoenas and noting that "courts have found that 17(c)subpoena requests for 'any and all' documents are too broad to meet the test outlined in *Nixon*.") (citing *Louis, supra*).[7]

### B. FDIC-R

---

[7] Moreover, Requests Nos. 2, 4, and 5 appear to be duplicative of the parties' joint subpoenas and, thus, should be quashed as unduly burdensome. Even if Defendant made the preliminary showing, he has not shown that he is unable to procure the documents.

In light of the foregoing standard and analysis, the Court finds that Defendant's FDIC-R Subpoena Requests Nos. 1, 2, 3, 4, 7, 9, 12-28, 31-36, and 38 are overly broad and lack the specificity necessary to satisfy the requirements of *Nixon*. Request Nos. 5-6 request documents sought in the parties' joint subpoenas. Accordingly, these requests are quashed as duplicative. Even assuming in this instance that Defendant has made the preliminary showing, he has not shown he cannot, with due diligence, procure the requested materials.

With respect to the remaining requests (Nos. 10, 11, 28, 29, 30, 37, and 39),[8] the Court finds Defendant has only satisfied his burden under *Nixon* as to Request Nos. 29 and 30, which seek (1) letters from the Oklahoma Banking Commission to Tim Headington regarding the Bomhaks or Techs and (2) either handwritten or typed letters from the Bomhaks or Techs to Defendant. Defendant has shown these documents are integral to defend the charges against him, they are specific in nature, and Defendant has established their probable admissibility.[9] Moreover, the record reflects Defendant would be unable to procure such documents without Court intervention.

---

[8] Defendant has withdrawn Request No. 8. *See* Def. Resp. at 9.

[9] Defense counsel discussed the relevance of the Bomhak/Tech notes during the June 13, 2017 hearing on the government's Motion to Determine the Scope of the Prosecution Team.

As to the remaining requests, Defendant has not made a sufficient threshold showing of how the requested documents are relevant, and the Court finds those requests should be quashed as well.

Lastly, Defendant has not established that he is entitled to have the documents delivered directly to defense counsel. *See United States v. Jenkins*, 895 F.Supp. 1389, 1394 (D. Hawai'i 1995) (finding that court erred in allowing subpoenaed documents to be turned over directly to the defense and not to the court). Accordingly, the Court will require modification of the subpoena to direct that any production be made to the Clerk of Court to receive the documents and hold them for inspection. The parties shall make arrangements with the clerk to coordinate any inspection.

Although the Court has granted the government's request to quash the subpoenas in substantial part, such order is without prejudice to Defendant's right to reissue more narrowly tailored subpoenas. Trial is scheduled for March 2018, thus, any amended subpoenas will likely not affect the scheduled trial in this matter.

## CONCLUSION

The United States' Motion to Quash Defendant's Rule 17(c) Subpoenas [Doc. No. 32] is **GRANTED IN PART** as set forth herein. Defendant's Motion to Compel Brady/Giglio Materials [Doc. No. 41] is **DENIED** as set forth herein.

**IT IS SO ORDERED** this 11th day of August 2017.

                                                                         TIMOTHY D. DEGIUSTI
                                                                         UNITED STATES DISTRICT JUDGE